UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| BENJAMIN GODWIN SWANSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:24-cv-1176 |
| ) | |
| WARDEN, FCI Pekin, ) | |
| ) | |
| Respondent. ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Petitioner Benjamin Godwin Swanson's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), Motion for Extension of Time to File Reply (Doc. 26), and Motion for Subpoenaed Documents (Doc. 27).

**I.    FACTUAL BACKGROUND[1]**

Swanson is serving a 480-month federal imprisonment sentence imposed by the District Court for the Western District of North Carolina. At the time he filed this petition, he was imprisoned at FCI Pekin in Pekin, Illinois.[2] His current projected release date is

---

[1] Unless otherwise noted, the facts are taken from Respondent's brief. *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.").

[2] While Swanson has now been transferred out of the Court's territorial jurisdiction, the Court maintains jurisdiction over Petitioner's Petition. *See In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021).

September 20, 2049. *See* Find an inmate, https://www.bop.gov/inmateloc/ (Reg. No. 34056-058) (last visited Jul. 8, 2025).

In January 2023, Swanson was imprisoned at USP Marion, in Marion, Illinois. During a search of his cell, prison personnel discovered he had constructed a vest out of various pieces of inmate clothing. Prison officials determined that the vest was "fashioned in a manner to closely resemble the stab resistant place carriers worn by staff members." (Doc. 18 at 1). Prison staff issued an incident report that charged Swanson with a violation of Code 299: "Conduct which disrupts or interferes with the security or orderly running of the institution . . . most like another High severity prohibited act." The violation was charged as "most like" Code 211: "Possessing any officer's or staff clothing." *Id.*; BOP Program Statement 5270.09, Inmate Discipline Program (July 8, 2011) at 47–48, available at https://www.bop.gov/policy/progstat/5270_009.pdf ("Inmate Discipline Program") (last visited July 24, 2025).

Swanson received a copy of the incident report on January 26, 2023. The Unit Discipline Committee (UDC) held a hearing on February 1, 2023, and advised Swanson of his rights. At the hearing, Swanson stated "I plead guilty to having a grey sweatshirt with intentions to be more productive as an orderly." *Id.* at 4–5. The UDC referred the matter to the Discipline Hearing Officer (DHO). Swanson was informed of his disciplinary hearing rights prior to appearing before the hearing officer and acknowledged receipt of the notice in writing. (Doc. 18-1 at 26).

Swanson's hearing was held on February 10, 2023, before DHO Shannon Wallace. Swanson requested BOP Recreation Specialist Fields represent him at the hearing and for

BOP Officer Lehmann and inmate Mendoza be presented as witnesses. Recreation Specialist Fields did appear as Swanson's staff representative at the hearing. The DHO report found Swanson guilty of the charge after considering the following evidence:

- Recreation Specialist Fields statement: "[Swanson] asked me if he could wear this vest for work, I told him he could only on the yard for work and nowhere else. I am confident he was not trying to make this look like staff clothing. I told him it was for him to use on the yard only;"

- The reporting officer's statement: "On January 26, 2023, at approximately 12:15 pm, I conducted a search of G02-008, which was assigned to inmate Swanson, Benjamin, Reg. No. 34-56-058. During the course of this search, I discovered an inmate made vest. This vest had been constructed from various pieces of inmate clothing and was fashioned in a manner to closely resemble the stab resistant plate carriers worn by staff members. This item was removed from the cell, and sent to the Lieutenant's Office;"

- Photographs of the altered clothing, reaffirming the reporting officer's statements;

- Swanson's statements during the UDC hearing: "I plead guilty to having a grey sweatshirt with intentions to be more productive as an orderly;"

- Swanson's statements at the DHO hearing: "The evidence presented at the [hearing] supports a plea of not guilty. The information written in section 11 of the incident report does not fit the description of the prohibited act code. A Grey sweatshirt, no matter how defaced, is and will always be inmate clothing. The Photo presented to the DHO blatantly shows a Grey sweatshirt with albeit, handy pockets labeled inmate clerk for work. The inmate personal property program statement permits improvisions [sic] with institutional and or personal materials as long as staff authorize it. The questioned conduct was permitted and used under direct supervision. [] Officer Fields is extremely credible and his witness testimony presented as evidence, outweighs the uninvestigated allegations. [M]y intentions are to always follow my supervisors orders. I implore the DHO to shelve this report based on the exculpatory evidence presented;" and

- Statements of Swanson's witnesses--

    o Inmate Mendoza's written witness statement: "The vest in question was made with a gray sweater and had no resemblance to a guard's stab vest. It was designed to be like an inmate orange vest. It was not colored but had pockets to hold utensils and the such. Though it was altered sweater equipment, I would like to point out it had a clear difference to a guard's uniform stab vest, and in no way intended for nefarious reasons;" and

    o Officer Lehmann's statement that she "wasn't present for this incident" and was not able to provide a witness statement.

(Doc. 18-1 at 40–42). In addition to other sanctions, the DHO revoked 27 days of good conduct time. Swanson received a copy of the DHO's report and was notified of his appeal rights on February 23, 2023.

Swanson exhausted his administrative remedies at the BOP, including appealing to the Regional Director. The Regional Director denied the appeal, agreeing that Swanson's vest "closely resembled a staff [member's] stab resistant vest," and reiterating that "inmates have used similar items to attempt to escape from [BOP] institutions by posing as a staff member." (Doc. 18 at 9).

Swanson filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on February 20, 2024. (Doc. 1). He alleges his disciplinary proceedings did not comply with due process and raises ten grounds that he argues entitle him to relief:

(1) An informal resolution was warranted instead of disciplinary proceedings;

(2) The DHO was not impartial and was significantly involved in the situation;

(3) The disciplinary decision was not based on the greater weight of the evidence;

(4) Swanson's supporting witness was asked irrelevant questions regarding the incident,

(5) Swanson is not guilty of violating Program Statement 5580.08 because his conduct was authorized;

(6) A confiscation form should have been filed so he could have proved rightful ownership of the vest;

(7) A 305 (or a 399) infraction only occurs if the item was not approved, and because the vest was approved, he is exempted from culpability;

(8) Swanson's behavior was not disruptive because he was obeying a verbal order and "receiving policy-granting permission to help increase productivity";

(9) The DHO improperly used invalid, unrelated and redundantly false information to support a bogus finding in that the DHO used Petitioner's rights to "support" my falsely claimed guilt.;

(10)  All inmate would attire would be considered contraband in the possession of unauthorized inmates.

Respondent filed a response in opposition to the Petition. (Doc. 18). Swanson then filed both a Motion to Subpoena Documents (Doc. 27), as well as a Reply (Doc. 28).

## II.    DISCUSSION

### A. Motion for Extension of Time and Motion for Discovery

Swanson's Motion for Extension of Time to File Reply (Doc. 26) is granted for good cause as stated in the motion.

Swanson has also filed a Motion for Subpoenaed Documents (Doc. 27). However, "[d]iscovery in habeas corpus actions is extremely limited." *See Glascoe v. Bezy*, 421 F.3d 543, 549 (7th Cir. 2005). "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Bramley*, 520 U.S. 899, 904 (1997). Rather, Rule 6(a) of the Rules Governing § 2254 Cases allows habeas

corpus petitioners to conduct civil discovery "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." *Id.; See also* Rule 1(b) (allowing a district court to apply the rules to habeas corpus petitions other than those under 28 U.S.C. § 2254). "Good cause" means that the petitioner must make specific factual allegations that demonstrate that there is good reason to believe that the petitioner may, through discovery, be able to garner specific evidence to entitle him to relief. *Id.* at 908–09. The factual allegations supporting a habeas petitioner's discovery request "must not be speculative or conclusory," as "discovery is not intended to be a fishing expedition." *Higgason v. Lemmon*, 6 Fed. App'x 433, 436 (7th Cir. 2001). A habeas petitioner's speculation that the discovery sought would support his claims does not constitute "good cause" for the discovery. *See Jones v. United States*, 231 Fed. App'x 485, 488 (7th Cir. 2007).

In Swanson's Motion for Subpoenaed Documents, he requests "essentially any disclosable document containing anything to do with [Swanson]." (Doc. 27 at 1). He argues that with these documents, he would be able to demonstrate the bias of the DHO hearing officer. As detailed below, Swanson was entitled to an impartial decisionmaker. *Wolff*, 418 U.S. at 570–71. However, "the constitutional standard for impermissible bias is high" because "[a]judicators are entitled to a presumption of honesty and integrity." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (citing *Withrow v. Larkin,* 421 U.S. 35, 47 (1975); *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 821 (1986)). "To overcome that presumption, [a prisoner] need[s] to present clear evidence of bias." *Nelson v. Stevens*, 861 F. App'x 667, 670 (7th Cir. 2021). Bias can be shown where the adjudicator was

"substantially involved in the investigation of the charges against an inmate." *Prude v. Meli*, 76 F.4th 648, 657–58 (7th Cir. 2023) (quoting *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). Moreover, "predetermining the outcome of a disciplinary hearing—no matter how that is accomplished—is [not] consistent with due process." *Id.* at 658.

Swanson has not provided good cause to believe that a search of all documents related to him would uncover evidence to support his contention that the adjudicator—DHO Wallace—was biased against him. Swanson states he believes DHO Wallace was biased because he called Swanson annoying in the past, because of DHO Wallace's comments made at the disciplinary hearing that he was "trying to figure out what to get [Swanson] with," and because DHO Wallace examined the vest prior to issuing his decision. However, as further addressed below, none of the alleged comments and conduct alone or together demonstrate DHO Wallace was involved in the investigation or otherwise rebut the presumption DHO Wallace was impartial in the result of the disciplinary hearing. Moreover, the request is not narrowly tailored, but simply seeks all documents the BOP has related to Swanson related, regardless of DHO Wallace's involvement and including those unrelated to the prison disciplinary charges. However, general evidence Swanson was disliked by DHO Wallace or others, which appears to be Swanson's goal in seeking this information, is not sufficient to show unconstitutional bias.

Accordingly, the Court finds Swanson has not shown good cause for discovery and his request represents no more than a fishing expedition. Thus, Swanson's Motion is denied.

**B. 28 U.S.C. § 2241 Petition.**

Challenges to the denial of good conduct time, are properly brought in a § 2241 petition. *Waletzki v. Keohane*, 13 F.3d 1079, 1081 (7th Cir. 1994). Federal prisoners have a statutory right to good conduct time and the loss of such credits affects a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 448 (1985); *see also Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011). Due process requires that prison administrators cannot revoke good time credits without "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454 (*citing Wolff,* 418 U.S. at 563-67). Further, the findings must be made by an impartial decisionmaker, *Wolff*, 418 U.S. at 570–71, and "supported by some evidence in the record." *Hill*, 472 U.S. at 454–55.

Here, the record shows, and Swanson does not contend otherwise, that he was given advance written notice of the disciplinary charges and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Instead, Swanson advances the following arguments: 1) he should not have been charged at all; 2) his adjudicator was not impartial; 3) there was not sufficient evidence to support the findings, and 4) one of his witnesses was misled. However, as explained below, the Court finds Swanson's disciplinary proceedings complied with the minimal due process standards.

### A. Swanson had no due process right to an informal resolution (Ground 1).

Swanson first argues that the conduct only warranted an informal resolution and should not have been a formal disciplinary charge. However, there is no constitutional right to informal resolution of prison rule violations or otherwise to the lightest possible response to a violation of prison rules. While Swanson may be right that the officers *could have* resolved the issue informally, whether to do so was entirely within the officer's discretion. The prison officer's decision to bring a formal disciplinary charge does not violate due process. To show a due process violation, Swanson must show that the proceeding itself did not comply with due process.

### B. Swanson has not shown the decisionmaker was impartial (Ground 2).

Swanson's second ground does invoke a due process claim: he argues DHO Wallace was not impartial. While Swanson was entitled to an impartial decisionmaker, *Wolff*, 418 U.S. at 570–71, "the constitutional standard for impermissible bias is high" because "[a]judicators are entitled to a presumption of honesty and integrity," *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821 (1986)). "To overcome that presumption, [a prisoner] need[s] to present clear evidence of bias." *Nelson v. Stevens*, 861 F. App'x 667, 670 (7th Cir. 2021). Bias can be shown where the adjudicator was "substantially involved in the investigation of the charges against an inmate." *Prude v. Meli*, 76 F.4th 648, 657–58 (7th Cir. 2023) (quoting *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). Moreover, "predetermining the outcome of a disciplinary hearing—no matter how that is accomplished—is [not] consistent with due process." *Id.* at 658.

Swanson alleges that DHO Wallace was his former supervisor and unit manager "who always described [Swanson] as annoying." (Doc. 1 at 9). Swanson also alleges DHO Wallace stated that he was "trying to figure out what to get [Swanson] with." *Id.* A review of Swanson's Regional Administrative Remedy Appeal provides some additional context. In this appeal, he states "[d]uring the hearing, the DHO admitted, that he [and] the Lieutenants were figuring out what to charge me with, he also stated he physically examined the authorized vest in person, proving he was significantly involved in some way."(Doc. 18-1 at 11). In this case, Swanson's ownership and possession of the vest was uncontested. The only question for DHO Wallace was whether this conduct violated prison rules. Accordingly, even if DHO Wallace physically examined the vest it does not follow that he participated in the investigation nor would it otherwise be evidence of bias. Rather, it would be a useful step to consider and determine whether possessing the vest violated institutional rules. Moreover, deciding on the proper charges is not the same as investigating the conduct. In the context of prison disciplinary proceedings, this statement would most logically mean DHO Wallace was deciding on the correct charges based on the evidence before him, not that he was out to "get" Swanson with a fabricated charge. Accordingly, without more, the Court cannot find that the DHO's alleged statement and actions were evidence of impartiality.

In his reply brief, Swanson provided additional details about alleged bullying and mistreatment by other staff members. He alleges that prior to the search that found the vest, another inmate heard Officer Lang tell "custody staff to find the approved vest and make-up a story convincing enough to get [Swanson] in trouble." (Doc. 28 at 3). He does

not allege DHO Wallace was involved with this action or otherwise was one of the staff members that "tried to thwart [Swanson's] institutional adjustment." *Id.* at 5. Moreover, Swanson has not argued that he did not own and possess the vest found in his cell, rather he disputes that possession of the vest qualified as a disciplinary violation.

Swanson also states in his reply that "the Respondent[] did not and do[es] not dispute that the DHO was directed to find me guilty, no matter what." (Doc. 28 at 9). Swanson's Petition did not contain this allegation, nor did any of his administrative appeals. Swanson states this now without any context as to who he believes directed the DHO or why he believes the DHO was so directed, let alone an explanation as to why he did not include this allegation in his administrative appeals or original Petition. Accordingly, the Court does not find the allegation credible. *See also* Rules Governing Section 2254 Cases, Rule 5(e) ("The petitioner may file a reply to the respondent's answer or other pleading."); *see, e.g., Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are deemed waived.").

**C. The DHO's decision was based on "some evidence."**

In grounds 3, 5, 6, 7, 8, 9, and 10, Swanson argues he should not have been found guilty of the offense for various reasons. First, in ground 3, Swanson argues that the DHO's findings were not supported by the "greater weight of the evidence." (Doc. 1 at 9). However, review by a federal court is limited to determining whether the DHO's finding was "supported by some evidence in the record." *Hill*, 472 U.S. at 454. "This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.* (internal quotations omitted). An

examination of the entire record is not required, nor should the court independently weight the evidence or attempt to determine the credibility of witnesses. *Id.* Instead, the Court needs only to determine if "there is any evidence in the record that could support" the decision, such that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* Only a modicum of evidence is needed under this lenient standard. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000), *cert. denied*, 531 U.S. 999 (2000).

The DHO's report includes the evidence that the DHO considered and relied on in finding that Swanson violated Code 299: "Conduct which disrupts or interferes with the security or orderly running of the institution . . . most like another High severity prohibited act," with, the "most like" act being Code 211: "Possessing any officer's or staff clothing." (Inmate Discipline Program at 47–48). Notably, Swanson's defenses at the hearing primarily focused on his alleged good intentions in making the vest and that a staff member gave him permission to use the vest. However, the language of the charges does not indicate that Swanson's intent was relevant or that staff permission would excuse the conduct. The evidence relied on by the DHO showed that the vest was found in Swanson's cell and that Swanson admitted to possessing the vest. (Doc. 18-1 at 41). The evidence also included the investigating officer's statement that the vest was "fashioned in a manner to closely resemble the stab resistant plate carriers worn by staff members." *Id.* Moreover, the DHO relied on his own examination of the photographic evidence, which showed Swanson created a vest with shoulder epaulets, Velcro-style name tapes, tactical strap connectors, and several pockets. *Id.* The DHO found that "[b]y possessing

any officers or staff clothing or Altered inmate clothing made to look like staff clothing, [Swanson] not only disrupted the security and orderly operation of the institution, but created the potential for a larger disturbance to occur as well. In the past, inmates have in fact attempted to escape from secure confines posing as staff members exiting the institution." *Id.* at 42. According to this record, the Court finds the DHO's decision was based on "some evidence."

Swanson's arguments to the contrary largely do not address the actual charges he faced. In grounds 5, 6, and 7, Swanson argues he is not guilty of violating Program Statement 5580.08 because his conduct was authorized, that a confiscation form should have been filed so he could have proved rightful ownership of the vest, and that a Code 305 (or a 399) infraction only occurs if the item was not approved, and because the vest was approved, he is exempted from culpability. (Doc. 1 at 10). However, these arguments are irrelevant, because Swanson was not charged with violating Program Statement 5580.09 or charged with a violation of Code 305 or 399, and the ownership of the vest was not disputed.

Swanson also argues, in ground 8, that his behavior was not disruptive because he was obeying a verbal order and "receiving policy-granting permission to help increase productivity." (Doc. 1 at 11). As Respondent notes, Recreation Specialist Fields did not state, that he "ordered" Swanson to create or use the vest, but that Swanson "asked . . . if he could wear [the] vest for work." (Doc. 18-1 at 42). At best, Swanson may be arguing that a staff member's consent to him having the vest exculpates him from a finding that possessing the vest could qualify as "conduct which disrupts or interferes with the

security or orderly running of the institution." (Inmate Discipline Program at 47–48). The Court is not unsympathetic to Swanson's alleged predicament: he claims a staff member gave him approval to make and possess the vest, but it turned out that making and possessing the vest violated prison rules. However, informal staff approval is not a logical defense to "conduct which disrupts or interferes with the security or orderly running of the institution." And, as the DHO also noted in his report, Swanson "participate[d] in Admissions and Orientations (A&O), wherein [he] [was] advised of BOP rules and regulations and [his] responsibility to abide by these rules" and given a A&O handbook which detailed the prohibited acts. (Doc. 18-1 at 42). Essentially, Swanson was responsible for knowing and following the rules.

Next, in ground 9, Swanson states "[t]he DHO was desperately grasping for straws by improperly using invalid, unrelated, [and] redundantly false information to support a bogus finding. Specifically, the DHO used my rights I exercised to 'support' my falsely claimed guilt." (Doc. 1 at 11). While this ground is not entirely clear, to the extent Swanson is complaining that his own statements were considered by the DHO, this does not entitle him to relief. The record shows the DHO considered Swanson's statements and evidence, but still found him to have violated the prison rules. As noted above, Swanson's statements did not exonerate him of the charges, and the DHO's decision was otherwise based on some evidence.

In ground 10, Swanson argues that all inmate attire would be considered contraband in the possession of unauthorized inmates, but should not be considered contraband. (Doc. 1 at 11). Again, this addresses the wrong charge: Swanson was charged

with "conduct which disrupts or interferes with the security or orderly running of the institution," not possessing contraband. Swanson ignores that the DHO's decision relied on the specific way the vest was altered to resemble the stab resistant place carriers worn by staff members. And, while Swanson has consistently pointed out the differences—i.e., the vest was grey whereas stab resistant place carriers are black—the vest also shares similarities to the stab resistant place carriers and thus the decision still relies on "some evidence."

### D.  Swanson's right to call witnesses in his defense was not violated (Ground 4).

Finally, Swanson's fourth ground for relief is that his supporting witness, Officer Lehmann, was asked irrelevant questions regarding the incident. (Doc. 1 at 9). Swanson had a qualified right "when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense." *Hill*, 472 U.S. at 454. "Although prison disciplinary committees may deny witness requests that threaten institutional goals or are irrelevant, repetitive, or unnecessary, they may not exclude witnesses requested by an offender with no explanation at all." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).

Swanson expected Officer Lehmann to state that she had seen the vest many times and knew Swanson had used it for work under the supervision of Officer Fields. *Id.* However, her witness statement merely said that "she wasn't present for this incident and was not able to write a witness statement for this." (Doc. 18-1 at 40). Swanson argues that this meant that his witness was asked the wrong question. (Doc. 1 at 9). If a witness is intentionally misled into believing she had no information regarding an incident, a

prisoner's right to call a witness could arguably be violated. However, the Court does not find any basis to conclude that the witness was misled merely because Swanson expected a certain statement.

Moreover, even if Swanson could show that the witness was misled and that this would qualify as a denial of his due process rights, he must also show prejudice. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (citing *Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir.1991)). Here, even if Officer Lehmann made the statement Swanson believes she should have made, there is no basis to find prejudice. The fact that another officer had seen Swanson use the vest for work under the supervision of Officer Fields is not a defense to the charges and would not have impacted the result. Accordingly, the Court finds that any error that occurred was harmless.

### III. CONCLUSION

For the reasons above, the Court GRANTS Petitioner's Motion for Extension of Time to File Reply (Doc. 26), and DENIES Petitioner's Motion for Subpoenaed Documents (Doc. 27) and Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1). The Clerk is directed to issue the judgment in favor of Respondent and close the case.

Signed on the 10th of September 2025.

/s/ Colleen R. Lawless
Colleen R. Lawless
United States District Judge